# IN THE COURT OF APPEALS OF IOWA

No. 19-1826
Filed June 3, 2020

**JOSEPH ROBERT HUGILL,**
    Plaintiff-Appellee,

**vs.**

**JENNY LEE HUGILL,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Butler County, Rustin Davenport, Judge.

Jenny Hugill appeals the district court's entry of a civil domestic protective order protecting Joseph Hugill. **REVERSED AND REMANDED.**

Joseph R. Sevcik, Cedar Falls, for appellant.

Joseph Hugill, Parkersburg, self-represented appellee.

Considered by Tabor, P.J., and May and Greer, JJ.

**MAY, Judge.**

The district court granted Joseph Hugill a protective order against his separated spouse, Jenny Hugill. We conclude the record does not support a finding of "domestic abuse" as defined in Iowa Code section 236.2(2) (2019). So we reverse.

This case centers on a phone call in which Jenny allegedly threatened Joseph. According to Joseph's testimony, Jenny told him that—"if" he "talk[ed] to"[1] Jenny's daughter— he "would be stabbed in the neck while [he was] sleeping." Joseph considered the threat credible because Jenny was agitated—she was "screaming," he said. Moreover, Joseph had information that Jenny previously stabbed someone. But Joseph did not specify where Jenny was located during the phone call. He only said: "From what I know, [Jenny] was at her friend's house." Nor did Joseph specify where he was located during the phone call.[2]

The district court granted a protective order. The same day, the district court filed a supplemental order that provided further explanation for the court's decision.[3] The court expressly found (1) Joseph was more credible than Jenny and (2) Joseph had proven his "recitation of events" by a preponderance of the evidence. The court concluded "there was an act threatening violence and that

---

[1] Jenny suggests this referred to a romantic interaction between Joseph and Jenny's daughter.

[2] In his petition, Joseph stated he "was at home when she (Jenny) threatened to kill me." But the petition does not state where Joseph's "home" was. It mentions Parkersburg—but only as an address where Joseph "can receive mail."

The petition stated Jenny "lives at" an address in Cedar Falls. But the petition did not state where Jenny was during the call.

[3] We appreciate the district court taking this extra step. It has aided our review considerably.

there has been proof by a preponderance of the evidence that Jenny Hugill had the means, ability, and intent to commit the violence or offense threatened." "Accordingly," the court "entered a permanent protective order." This appeal followed.

Our review is de novo. *In re Landhuis*, No. 14-1447, 2015 WL 1331854, at *2 (Iowa Ct. App. Mar. 25, 2015). "We examine both the law and the facts, and we adjudicate anew those issues properly preserved and presented for appellate review." *Id.* "We give weight to the district court's findings, particularly its credibility determinations . . . ." *Id.* "[B]ut our obligation to adjudicate the issues anew means that we must satisfy ourselves the petitioning party has come forth with the quantum and quality of evidence sufficient to prove the statutory grounds for issuing a protective order." *Id.*

Our review begins with Iowa Code chapter 236, "Iowa's Domestic Abuse Act." *See Fishel v. Redenbaugh*, 939 N.W.2d 660, 662 (Iowa Ct. App. 2019) (citing Iowa Code § 236.1). We find its meaning in its words. *See id.* at 663.

A plaintiff seeking a chapter 236 protective order must prove the defendant "engaged in domestic abuse." Iowa Code § 236.5(1); *see also id.* § 236.4(1) ("[T]he plaintiff must prove the allegation of domestic abuse by a preponderance of the evidence."). Section 236.2 defines "domestic abuse" to mean that (1) a defendant committed an "assault as defined in section 708.1" against the plaintiff while (2) the defendant and plaintiff were in one of the relationships identified in section 236.2(2). Those qualifying relationships include, among others, "separated spouses" who were "not residing together at the time of the assault." Iowa Code § 236.2(2)(b).

No one disputes that Joseph and Jenny fell within a qualifying relationship: They were "separated spouses" and not residing together. But Jenny disputes that her alleged threat amounted to an "assault as defined in section 708.1."

As with all statutes, we find the meaning of section 708.1 in its words. *See Fishel*, 939 N.W.2d at 663. It states, in pertinent part:

> 2. A person commits an assault when, without justification, the person does any of the following:
> . . . .
> b. Any act which is intended to place another in fear of *immediate* physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

Iowa Code § 708.1(2)(b) (emphasis added).

Applying these words to the facts before us, the central question is whether Jenny's threat (1) was "intended to place" Joseph "in fear of *immediate* physical contact" that would be "painful, injurious, insulting, or offensive" and (2) was "coupled with the apparent ability to execute" the threat. *See id.* (emphasis added). We emphasize the word "immediate." *Id.* In this context, we understand "immediate" to mean "occurring without delay; instant." *Henderson v. Mullenix*, No. 19-0626, 2020 WL 1049872, at *2 (Iowa Ct. App. Mar. 4, 2020) (citation omitted); *Runyan v. Runyan*, No. 17-1120, 2018 WL 3302007, at *3 (Iowa Ct. App. July 5, 2018) (quoting *Immediate*, Black's Law Dictionary (10th ed. 2014)); *Huntley v. Bacon*, No. 16-0044, 2016 WL 3271874, at *1 (Iowa Ct. App. June 15, 2016) (citation omitted); *Landhuis*, 2015 WL 1331854, at *2 (citation omitted).

As explained, Jenny's threat occurred during a phone call. She told Joseph that—"if" he "talk[ed] to" Jenny's daughter—he "would be stabbed in the neck while [he was] sleeping."

We understand why this would concern Joseph.[4]  For at least two reasons, though, we do not believe Jenny made a threat of "immediate physical contact" that was "coupled with the apparent ability to execute."

For one thing, the *content* of Jenny's threat did not suggest Joseph would be stabbed "instant[ly]," "without delay," and therefore "immediate[ly]."  She did not tell Joseph he would be stabbed *right way*—while he was on the phone or even soon after.  Instead, she told him he would be stabbed *later*—"while" he was "sleeping."

Moreover, the *context* shows Jenny did not have the "apparent ability" to stab Joseph "instant[ly]," "without delay," and therefore "immediate[ly]."  Jenny did not threaten him "face-to-face."  *See Shannon v. Baumgartner*, No. 14-1650, 2015 WL 4935711, at *3 (Iowa Ct. App. Aug. 19, 2015).  Instead, the threat occurred over the telephone.  And the record does not show Jenny was anywhere near Joseph when the call occurred.  In fact, the record does not allow any conclusion about where the parties were.  While Joseph's petition states he could "receive mail" at an address in Parkersburg, and that Jenny "lives at" an address in Cedar Falls, the record does not show the parties were at those addresses *during the call.*  In fact, Joseph testified he thought Jenny was "at her friend's house," not her own residence.  But Joseph did not say where the friend lived.  Nor did Joseph say where he was during the call.  Although his petition suggests he was "at home" when Jenny threatened him, the record does not show where "home" was.

---

[4] To be clear, though, for purposes of section 708.1, "the pertinent state of mind is that of the defendant, not the victim."  *DeLisle v. DeLisle*, No. 09-0093, 2009 WL 3088561, at *3 (Iowa Ct. App. Sept. 17, 2009).

For sure, we believe "factual disputes depending heavily on the credibility of the witnesses are best resolved by the district court, which has a better opportunity than we do to evaluate the witnesses." *DeLisle*, 2009 WL 3088561, at *2. Relying on the district court's credibility findings, we have taken Joseph's version of events to be true. Still "we believe that even [Joseph's] testimony did not establish that [Jenny] had assaulted [him]." *See id.* Jenny only threatened harm at some indeterminate future time—"while" Joseph was "sleeping"—not *immediate* harm. *Cf. id.* at *3 ("'Eventually' and 'immediately' are not the same thing."). Moreover, because the record does not show where the parties were relative to one another (forty feet apart? forty miles? 400 miles?), "[t]he record does not establish [Jenny's] apparent ability to execute the threat at the time the threat was made." *See Speicher v. Rajtora*, No. 08-0769, 2009 WL 607497, at *1 (Iowa Ct. App. Mar. 11, 2009). So we find there is insufficient evidence of an assault within the meaning of section 708.1. *See Landhuis*, 2015 WL 1331854, at *3 (noting "our courts have held threats made over the telephone or by text message did not constitute an assault due to the lack of immediacy and inability to execute the act" and collecting cases); *see also Henderson*, 2020 WL 1049872, at *2 (concluding threats via letter, phone, and text messages did not constitute assaults); *Shannon*, 2015 WL 4935711, at *3 (concluding threat via phone did not constitute assault).

Because the record does not establish an "assault as defined in section 708.1," and thus does not establish "domestic abuse" within the meaning of section 236.2, we reverse and remand for dismissal of the civil domestic protective order.

**REVERSED AND REMANDED.**